# UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ALABAMA
# MIDDLE DIVISION

| | |
|---|---|
| KATHERINE ASHLYNNE WISE, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Case No.: 4:17-cv-00185-SGC |
| ) | |
| SOCIAL SECURITY ) | |
| ADMINISTRATION, ) | |
| COMMISSIONER, ) | |
| ) | |
| Defendant. ) | |

## MEMORANDUM OPINION[1]

Plaintiff Katherine Ashlynne Wise appeals from the decision of the Commissioner of the Social Security Administration ("Commissioner") denying her application for Supplemental Security Income ("SSI"). (Doc. 1). Plaintiff timely pursued and exhausted her administrative remedies, and the decision of the Commissioner is ripe for review pursuant to 42 U.S.C. §§ 405(g), 1383(c)(3). For the reasons stated below, the Commissioner's decision is due to be affirmed.

## I.   FACTS, FRAMEWORK, AND PROCEDURAL HISTORY

Plaintiff was seventeen years old at the time she filed her SSI application; she was twenty at the time of the Administrative Law Judge's ("ALJ's") decision. (*See* R. 52-53). Plaintiff has a high school education and speaks English; she has

---

[1] The parties have consented to magistrate judge jurisdiction pursuant to 28 U.S.C. § 636(c). (Doc. 10).

no work experience. (R. 52). A previous application for SSI benefits was adjudicated in Plaintiff's favor when she was a child; she was awarded benefits until she turned eighteen. (R. 36). Plaintiff filed the instant application on June 26, 2013, alleging a disability onset of August 1, 2007, due to rheumatoid arthritis and lupus. (*Id.*; R. 222).

When evaluating the disability of individuals over the age of eighteen, the regulations prescribe a five-step sequential evaluation process. *See* 20 C.F.R. §§ 404.1520, 416.920; *Doughty v. Apfel,* 245 F.3d 1274, 1278 (11th Cir. 2001). The first step requires a determination whether the claimant is performing substantial gainful activity ("SGA"). 20 C.F.R. § 404.1520(a)(4)(i). If the claimant is engaged in SGA, he or she is not disabled and the evaluation stops. *Id*. If the claimant is not engaged in SGA, the Commissioner proceeds to consider the combined effects of all the claimant's physical and mental impairments. 20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii). These impairments must be severe and must meet durational requirements before a claimant will be found disabled. *Id*. The decision depends on the medical evidence in the record. *See Hart v. Finch,* 440 F.2d 1340, 1341 (5th Cir. 1971). If the claimant's impairments are not severe, the analysis stops. 20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii). Otherwise, the analysis continues to step three, at which the Commissioner determines whether the claimant's impairments meet the severity of an impairment listed in 20

C.F.R. Part 404, Subpart P, Appendix 1. 20 C.F.R. §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii). If the impairments fall within this category, the claimant will be found disabled without further consideration. *Id.* If the impairments do not fall within the listings, the Commissioner determines the claimant's residual functional capacity ("RFC"). 20 C.F.R. §§ 404.1520(e), 416.920(e).

At step four the Commissioner determines whether the impairments prevent the claimant from returning to past relevant work. 20 C.F.R. §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv). If the claimant is capable of performing past relevant work, he or she is not disabled and the evaluation stops. *Id.* If the claimant cannot perform past relevant work, the analysis proceeds to the fifth step, at which the Commissioner considers the claimant's RFC, as well as the claimant's age, education, and past work experience, to determine whether he or she can perform other work. *Id.*; 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v). If the claimant can do other work, he or she is not disabled. *Id.*

Applying the sequential evaluation process, the ALJ found Plaintiff had not engaged in SGA since her application date. (R. 38). At step two, the ALJ found Plaintiff suffered from the following severe impairments: rheumatoid arthritis; undifferentiated connective tissue disease; Raynaud's Syndrome, and lupus. (R. 38-39).

At step three, the ALJ found Plaintiff did not have an impairment or combination of impairments meeting or medically equaling any of the listed impairments. (R. 39-41). Before proceeding to step four, the ALJ determined Plaintiff had the RFC to perform light work as defined in 20 C.F.R. § 416.967(b) with the following limitations:

> [T]he claimant can sit at least two hours without interruption and a total of at least six hours over the course of an eight-hour workday. The claimant can stand and/or walk at least two hours without interruption and a total of at least six hours over the course of an eight-hour workday. The claimant cannot climb ropes, poles, scaffolds or ladders. The claimant can occasionally climb ramps and stairs. The claimant can frequently use her upper extremities for reaching overhead, pushing, pulling, handling and fingering. The claimant can occasionally balance, stoop, kneel and crouch. The claimant cannot crawl. The claimant can occasionally work in humidity, wetness, and extreme temperatures. The claimant can occasionally work in dusts, gases, odors and fumes. The claimant cannot work in poorly ventilated areas. The claimant cannot work at unprotected heights. The claimant cannot work with operating hazardous machinery. The claimant can occasionally work while exposed to vibration. The claimant can occasionally operate motorized vehicles. The claimant can respond appropriately to the public; however, the claimant is limited to work activity that does not require interaction with the public (due to fear of possible infection and not mental impairment).

(R. 41).

At step four, the ALJ determined Plaintiff had no past relevant work. (R. 52). Because the Plaintiff's RFC did not allow for the full range of light work, the ALJ relied on the testimony of a vocational expert ("VE") in finding a significant

number of jobs in the national economy Plaintiff can perform. (R. 52-53). The ALJ concluded by finding Plaintiff was not disabled. (R. 53).

## II. STANDARD OF REVIEW

A court's role in reviewing claims brought under the Social Security Act is a narrow one. The scope of its review is limited to determining (1) whether there is substantial evidence in the record as a whole to support the findings of the Commissioner, and (2) whether the correct legal standards were applied. *See Stone v. Comm'r of Soc. Sec.*, 544 F. App'x 839, 841 (11th Cir. 2013) (citing *Crawford v. Comm'r of Soc. Sec.*, 363 F.3d 1155, 1158 (11th Cir. 2004)). A court gives deference to the factual findings of the Commissioner, provided those findings are supported by substantial evidence, but applies close scrutiny to the legal conclusions. *See Miles v. Chater*, 84 F.3d 1397, 1400 (11th Cir. 1996).

Nonetheless, a court may not decide facts, weigh evidence, or substitute its judgment for that of the Commissioner. *Dyer v. Barnhart*, 395 F.3d 1206, 1210 (11th Cir. 2005) (quoting *Phillips v. Barnhart*, 357 F.3d 1232, 1240 n.8 (11th Cir. 2004)). "The substantial evidence standard permits administrative decision makers to act with considerable latitude, and 'the possibility of drawing two inconsistent conclusions from the evidence does not prevent an administrative agency's finding from being supported by substantial evidence.'" *Parker v. Bowen*, 793 F.2d 1177, 1181 (11th Cir. 1986) (Gibson, J., dissenting) (quoting *Consolo v. Fed. Mar.*

*Comm'n*, 383 U.S. 607, 620 (1966)). Indeed, even if a court finds that the proof preponderates against the Commissioner's decision, it must affirm if the decision is supported by substantial evidence. *Miles*, 84 F.3d at 1400 (citing *Martin v. Sullivan*, 894 F.2d 1520, 1529 (11th Cir. 1990)).

No decision is automatic, for "despite th[e] deferential standard [for review of claims], it is imperative that th[is] Court scrutinize the record in its entirety to determine the reasonableness of the decision reached." *Bridges v. Bowen*, 815 F.2d 622, 624 (11th Cir. 1987) (citing *Arnold v. Heckler*, 732 F.2d 881, 883 (11th Cir. 1984)). Moreover, failure to apply the correct legal standards is grounds for reversal. *See Bowen v. Heckler*, 748 F.2d 629, 635 (11th Cir. 1984).

## III. DISCUSSION

Plaintiff argues the Commissioner's decision should be reversed and remanded because the ALJ did not afford substantial weight to the February 2, 2015 opinion of Dr. David McLain, Plaintiff's long-time treating rheumatologist. (Doc. 11 at 3-9). Plaintiff notes Dr. McLain is a specialist who consistently treated Plaintiff since 2007. (*Id.* at 5). The opinion on which Plaintiff relies is a Physical Capacities Evaluation form completed by Dr. McLain. On that form, Dr. McLain opined Plaintiff: (1) could occasionally lift five pounds and frequently lift one pound; (2) could sit for four hours and stand or walk for two hours during an eight-hour workday; (3) would need to lie down for twenty minutes at a time during the

day; (4) would need to take ten minute breaks every hour, in addition to typical morning, afternoon, and lunch breaks; (5) should avoid exposure to dust, fumes, gasses, extreme temperatures, humidity, and environmental pollutants; (6) could rarely—meaning up to 5% of an eight-hour workday—operate motor vehicles; (7) could never push or pull using arm and/or leg controls, climb stairs or ladders, balance, perform gross or fine manipulation, bend, stoop, reach, or work around hazardous machinery; and (8) would be absent more than four days each month. (R. 563). Dr. McLain based his opinion of Plaintiff's restrictions on her "severe rheumatoid arthritis, lupus, and severe joint swelling and pain." (*Id.*).[2]

The opinion of a claimant's treating physician is entitled to substantial or considerable weight absent a showing of good cause to the contrary. *Lewis v. Callahan*, 125 F.3d 1436, 1440 (11th Cir. 1997). Failure to articulate the reasons for giving less weight to the opinion of a treating physician is reversible error. *Id.* Good cause exists where a treating physician's opinion: (1) is not supported by the evidence; (2) is contradicted by the evidence; or (3) is conclusory or inconsistent

---

[2] The record includes additional letters written by Dr. McLain, which the ALJ addressed. (R. 49-50). First, Dr. McLain wrote several letters between 2008 and 2012, opining that Plaintiff should receive home schooling. (R. 530-33). The ALJ noted these letters covered a timeframe when Plaintiff was found to be disabled as a child and further noted Plaintiff successfully returned to school by 2013. (R. 49). The ALJ also addressed two opinions from Dr. McLain submitted in June and September 2014. (R. 49-50). Both opinions note Plaintiff's diagnoses and medications, state Plaintiff's response to medication was not as positive as hoped, and summarily opine Plaintiff was "totally disabled from any employment." (R. 477-78). The ALJ properly found Dr. McLain's 2014 opinions were unsupported by objective findings and opined on an issue reserved to the Commissioner. *See* SSR 96-5p.

with the doctor's own medical records. *Phillips*, 357 F.3d at 1240-41. While the ALJ can "reject the opinion of any physician when the evidence supports a contrary conclusion . . . the ALJ is required [] to state with particularity the weight he gives to different medical opinions and the reasons why." *McCloud v. Barnhart*, 166 F. App'x 410, 418-19 (11th Cir. 2006) (citing *Bloodsworth v. Heckler*, 703 F.2d 1233, 1240 (11th Cir. 1983); *Sharfarz v. Bowen*, 825 F.2d 278, 279 (11th Cir. 1987)). Furthermore, the ALJ must explain why an opinion is inconsistent with the medical record; he or she cannot simply make a conclusory pronouncement that the opinion is inconsistent with evidence of record. *See Bell v. Colvin*, No. 15-0743, 2016 WL 6609187 at *4 (M.D. Ala. Nov. 7, 2016). While opinions from one-time examiners are not entitled to any particular deference, they can—when consistent with the medical record—be used to discount inconsistent opinions from treating physicians. *See McSwain v. Bowen*, 814 F.2d 617, 619 (11th Cir. 1987); *Fries v. Comm'r of Soc. Sec. Admin.*, 196 F. App'x 827, 833-34 (11th Cir. 2006).

The ALJ afforded "some but not great weight to" Dr. McLain's opinion. (R. 50). The ALJ offered several justifications for affording Dr. McLain's opinion less than substantial weigh. First, the ALJ noted the opinion was "not fully consistent with the objective findings described in Dr. McLain's most recent examination in September 2014." (*Id.*). While crediting Dr. McLain's specialty and his long

treating relationship with Plaintiff, the ALJ concluded his opinion was based on Plaintiff's subjective complaints relating to "flare-ups rather than objective evidence describing the most she could do." (*Id.*). In this regard, the ALJ noted Dr. McLain's opinion conflicted with the consultative examination findings of Dr. Hisham Hakim and the clinical findings of Dr. Steven Jones. (*Id.*). Finally, the ALJ also noted Dr. McLain's opinion conflicted with Plaintiff's reports of daily activities, including that she could drive and had been able to return to school. (*Id.*). Each rationale the ALJ articulated to justify affording less weight to Dr. McLain's opinion is addressed in turn.

First, the ALJ relied on inconsistencies between the extreme limitations described in Dr. McLain's opinion and his findings during his previous examination of Plaintiff. (R. 50). Specifically, the ALJ noted that Dr. McLain's September 29, 2014 examination revealed "'normal' findings in most areas except for those related to her joints." (R. 50). Dr. McLain's clinical notes reveal Plaintiff had tenderness in 34 joints and swelling in 20 joints, mostly in her hands and feet. (R. 567). While Plaintiff complained of "incapacitating" pain, Dr. McLain noted her overall appearance and level of distress were "normal." (R. 564, 567). Dr. McLain also noted Plaintiff's: (1) cervical, thoracic, and lumbar spine were "normal"; (2) neck, respiratory, and cardiovascular exams were "normal"; (3) musculoskeletal exam revealed good alignment in the spine with no scoliosis,

9

tenderness, or deformity; (4) shoulders and elbows demonstrated "no tenderness, swelling, effusion, or limitation to range of motion"; and (5) balance and gait were "normal." (R. 567-68). The ALJ accurately described the foregoing findings from Dr. McLain's September 29, 2014 examination. (R. 46, 50).

There is also support for the ALJ's conclusion that Dr. McLain's opinion was based on Plaintiff's subjective complaints during "flare-ups" of her symptoms. Dr. McLain's clinical notes from an August 26, 2013 visit noted joint pain and/or swelling in Plaintiff's lumbar spine, shoulders, elbows, wrists, hands, right hip, knees, and right foot. (R. 428). At other times, Plaintiff's hands, feet, shoulders, and ankles were positive for joint pain. (R.491, 498, 505, 513). But Dr. McLain consistently noted Plaintiff's thoracic spine, cervical spine, and reflexes were normal, that she exhibited no motor sensory deficits, and that she appeared well nourished and well developed. (R. 428, 498, 505, 512). Crucially, the ALJ noted that, from October 2013 through March 2014, Dr. McLain found Plaintiff was in "no acute distress." (R. 490, 497, 504, 512; *see* R. 46). From January through March 2014, Dr. McLain's physical exams revealed joint pain or tenderness, but swelling was limited to the right knee. (R. 498, 505, 512). Accordingly, there is support in the record for the ALJ's conclusion that Dr. McLain's opinion was based on Plaintiff's complaints during flare-ups of her conditions rather than objective observations.

10

The ALJ's treatment of Dr. McLain's opinion is also supported by other evidence in the record. The ALJ acknowledged Plaintiff's various diagnoses, complaints, and medical treatments. (R. 44-46).[3] However, the ALJ found the medical record contained contradictory information concerning the severity of Plaintiff's conditions. For instance, in November 2013, Plaintiff visited Children's Hospital of Alabama for "horrible" back pain. (R. 338-45). While medical staff noted tenderness in Plaintiff's lower back, physical examination and x-rays revealed no abnormalities. Plaintiff was treated with Lortab and discharged in an "improved" condition. (*Id.*; *see* R. 44). Plaintiff returned nearly four months later complaining of difficulty breathing; medical providers noted Plaintiff was in mild distress. (R. 310-37). However, while physical examination revealed joint tenderness, swelling, and poor distal perfusion, her pulmonary exam revealed no acute distress and imaging showed no acute abnormalities. (R. 312, 325, 328-37; *see* R. 44-45). Plaintiff was diagnosed with trouble breathing, joint pain, and shortness of breath, and released in "stable" condition. (*Id.*).

The ALJ also noted the limitations imposed by Dr. McLain's opinion conflicted with the results of the consultative examination performed by Dr.

---

[3] The ALJ noted Plaintiff's diagnoses included: (1) lupus; (2) rheumatoid arthritis; (3) diffuse connective tissue disease; (4) hypothyroidism; (5) Raynaud's syndrome with ulcers and scars; (6) diarrhea; (7) joint pain in the pelvic region, right hip, and lower leg; (8) vitamin D deficiency; (9) mixed connective tissue disease; (10) polymyositis; (11) fibromyalgia; (12) right bundle branch block; (13) myalgia and myositis; and (14) finger blisters. (R. 46).

Hakim. (R. 50). Dr. Hakim examined Plaintiff on September 15, 2014, noting the symptoms of which she complained. (R. 535-43).[4] As to muscle strength and tone, Dr. Hakim's physical examination revealed: (1) "adequate" flexion, extension, and range of motion in Plaintiff's neck with tenderness in the trapezius muscles, worse on the right; (2) tenderness in the occipital nerve worse on the right; (3) a 20% decrease in lateral rotation; (4) normal cardiovascular findings; (5) "normal" muscle tone; (6) adequate strength in the upper extremities, including "5/5 in the biceps, triceps, and brachkradialis;" (7) "adequate" strength in the lower extremities; and (8) hand grip strength of 10 kg on the right and 7 kg on the left. (R. 535). Dr. Hakim's musculoskeletal examination revealed Plaintiff: (1) had a steady gait; (2) could squat ten times normally; (3) could balance and walk on her heels and toes without difficulty; (4) could bend forward normally, although she had to bend her knees; (5) demonstrated a negative straight leg raise bilaterally; (6) had full range of motion in her wrist with discomfort, but no erythema; (7) had erythema in her fingers and toes; (8) could "hop on both legs individually and together;" and (9) had normal sensation to pinpricks in her upper and lower extremities. (*Id.*). Dr. Hakim's impression was that Plaintiff had experienced a

---

[4] Plaintiff contends "Dr. Hakim failed to acknowledge the diagnoses of rheumatoid arthritis and undifferentiated connective tissue disease." (Doc. 11 at 4). However, Dr. Hakim's evaluation includes a diagnosis of lupus, notes elevated rheumatoid factors, and acknowledges Plaintiff suffered from arthritis. (R. 535-36). Additionally, Plaintiff does not argue any particular legal consequences would follow Dr. Hakim's alleged failure to note all of her diagnoses.

"recent flare up" of her Lupus, which appeared "to be in somewhat of an intermission stage." (*Id.*).

Based on the results of his examination, Dr. Hakim completed a form regarding his opinion of Plaintiff's ability to perform work-related activities. (R. 538-42). Dr. Hakim opined Plaintiff could: (1) frequently lift and carry up to 10 pounds; (2) occasionally lift and carry up to 20 pounds; (3) never lift or carry more than 20 pounds. (R. 538). As to the ability to sit, stand, and walk, Dr. Hakim opined Plaintiff could: (1) sit continuously for two hours and for a total of five hours per workday; (2) stand continuously for one hour and for a total of two hours per workday; (3) walk continuously for two hours and for a total of three hours per workday; and (4) walk without the use of a cane. (R. 539). As to use of her hands and feet, Dr. Hakim opined Plaintiff could: (1) continuously reach, handle, finger, and feel with both hands; (2) frequently push and/or pull with both hands; and (3) frequently use foot controls with either foot. (Doc. 540). As to postural limitations, Dr. Hakim opined Plaintiff could: (1) frequently balance, stoop, kneel, crouch, and crawl; (2) occasionally climb stairs and ramps; and (3) never climb ladders or scaffolds. (R. 541). As to environmental limitations, Dr. Hakim opined Plaintiff could tolerate: (1) frequent exposure to driving, dust, odors, fumes, pulmonary irritants, extreme cold, extreme heat, and vibrations; (2) occasional

exposure to moving mechanical parts, humidity, and wetness; (3) no exposure to unprotected heights; and (4) exposure to moderate noise levels. (R. 542).

The ALJ afforded Dr. Hakim's opinion "significant, but not great weight." (R. 51). In doing so, the ALJ found Dr. Hakim's opinion was consistent with his examination findings. (*Id.*). While noting Dr. Hakim's opinion was not entirely consistent with Plaintiff's RFC, the ALJ found it "support[ed] the ultimate decision reached and [] is not inconsistent with the objective findings." (*Id.*). The ALJ also noted Dr. Hakim's observations and opinion contradicted the more significant limitations expressed in Dr. McClain's opinion. (R. 50). In particular, the ALJ observed Dr. McLain's conclusion that Plaintiff could never squat was contradicted by Plaintiff's ability to squat ten times during Dr. Hakim's consultative examination. (*Id.*). Likewise, the ALJ noted Dr. McLain's opinion that Plaintiff could never bend forward was undermined by Plaintiff's ability to bend normally—albeit with bent knees—during Dr. Hakim's consultative examination. (*Id.*).[5]

Next, the ALJ found Dr. McLain's opinion was contradicted by the August 1, 2014 examination findings of Dr. Jones. (R. 50). While noting Plaintiff's multiple diagnoses, Dr. Jones observed Plaintiff was in no acute distress. (R. 553).

---

[5] The ALJ also afforded significant weight to the August 28, 2013 opinion of the State agency physician, Dr. Richard Whitney. (R. 51). Dr. Whitney did not examine Plaintiff, but he reviewed the medical records available at the time and opined she could perform a limited range of light work activities. (R. 103-05). While noting Dr. Whitney did not have access to the full medical record, and finding his opinion was not entirely consistent with Plaintiff's RFC, the ALJ found Dr. Whitney's opinion "support[ed] the ultimate decision" and added credence to Dr. Hakim's opinion. (R. 51).

Dr. Jones, who saw Plaintiff following her reports of heart palpitations, concluded her chest and neck exams were unremarkable and the pulmonary exam revealed unlabored, clear respiration. (*Id.*). Dr. Jones advised Plaintiff to quit smoking. (R. 554). The ALJ correctly noted these examination findings did not support Dr. McLain's opinion.

The ALJ also noted Dr. McLain's opinion was undermined by Plaintiff's self-reported activities of daily living. (R. 50). The ALJ noted Plaintiff reported the ability to: (1) maintain some personal care; (2) drive; (3) shop for clothes in stores; (4) handle her finances; (5) watch television; (6) attend church services; (7) prepare microwave meals and cereal; (8) do laundry; (9) load the dishwasher; and (10) travel outside the home several times a week to visit family members. (R. 237-40, 249, 256-57; *see* R. 42-44). The ALJ noted Plaintiff's testimony that she needs assistance with her daily activities. (R. 44). Plaintiff further testified she is able to drive and she spends a typical day watching television and helping her mother with housework. (R. 74, 77). Plaintiff tries to attend church on a regular basis but typically misses Sunday services once a month. (R. 77). Plaintiff's friends typically visit her; she usually does not travel to friends' houses. (*Id.*).

As previously noted, there is good cause to discount the opinion of a claimant's treating physician where the opinion: (1) is not supported by the evidence; (2) is contradicted by the evidence; or (3) is conclusory or inconsistent

15

with the doctor's own medical records. *Phillips*, 357 F.3d at 1240-41. Here, the ALJ's conclusion that Dr. McLain's opinion was undermined by his previous examination findings is supported by substantial evidence. Likewise, the ALJ did not err by concluding the extreme limitations posited by Dr. McClain were the product of Plaintiff's subjective complaints concerning the severity of her symptoms during flare-ups. The ALJ also did not err in concluding Dr. McLain's opinion was inconsistent with, and undermined by, Dr. Hakim's opinion, particularly where the ALJ found Dr. Hakim's opinion was consistent with his examination findings and the record as a whole. *Fries*, 196 F. App'x at 833-34; *Jones v. Bowen*, 810 F.2d 1001, 1005-06 (11th Cir. 1986) (ALJ did not err in discounting treating physician's opinion that was contradicted by consultative examiner's opinion). The same is true to the extent the ALJ found contradictions between Dr. McLain's opinion and the clinical findings of Dr. Jones. Finally, the ALJ did not err in concluding Plaintiff's daily activities contradicted the extreme limitations imposed by Dr. McLain. While not dispositive, a claimant's activities may be considered to show limitations are not as severe as alleged. 20 C.F.R. § 416.929(c)(3)(i); *Dyer*, 395 F.3d at 1212; *Hughes v. Comm'r of Soc. Sec.* 486 F. App'x 11, 14 (11th Cir. 2012) (claimant's self-reported activities undermined treating physician's opinion regarding ability to function).

In discounting Dr. McLain's opinion regarding Plaintiff's abilities, the ALJ noted internal inconsistencies with Dr. McLain's treatment record and other medical records, contradiction with Dr. Hakim's opinion—an opinion consistent with Dr. Hakim's and Dr. Jones's examination findings—and inconsistencies with Plaintiff's self-reported abilities. Taken together, these factors represent substantial evidence supporting the ALJ's decision. Accordingly, the ALJ did not err in affording less than substantial weight to Dr. McLain's opinion.

The foregoing contradictions noted by the ALJ also provide substantial evidence to support the ALJ's conclusion that Plaintiff's testimony regarding the severity of her symptoms was not entirely credible. *Wilson v. Barnhart*, 284 F.3d 1219, 1225 (11th Cir. 2002) (ALJ permitted to discredit subjective testimony of pain if he or she articulates explicit and adequate reasons for doing so); (*see* R. 46). When the credibility of a claimant's testimony is at issue, "[t]he question is not . . . whether the ALJ could have reasonably credited testimony, but whether the ALJ was clearly wrong to discredit it." *Werner v. Comm'r of Soc. Sec.*, 421 F. App'x 935, 938-39 (11th Cir. 2011).

## IV. CONCLUSION

Upon review of the administrative record and considering all of Plaintiff's arguments, the undersigned finds the Commissioner's decision is supported by

17

substantial evidence and is in accord with applicable law. Accordingly, the Commissioner's decision is due to be affirmed. A separate order will be entered.

**DONE** this 30th day of March, 2018.

_____
STACI G. CORNELIUS
U.S. MAGISTRATE JUDGE